UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:16-CR-43 JD

JAMES JOHNSON

**OPINION AND ORDER**

On February 4, 2021, the Court denied Defendant James Johnson's motion for compassionate release due to the threat of COVID-19 virus. [DE 49]. Mr. Johnson is currently serving a 120-month term of imprisonment on his conviction for possessing stolen firearms. He is housed at Milan FCI and he is currently set to be released in March 2024. On February 11, 2021, after the deadline to file a reply had passed and the Court had issued its order, Mr. Johnson moved for an extension of time to file a reply. [DE 50]. The Court granted Mr. Johnson's request and noted that it would reconsider the order if the reply was filed by the new deadline. [DE 51]. Mr. Johnson filed a timely reply. [DE 52]. Since that reply, upon request of the Court, the Government has filed records reflecting Mr. Johnson's COVID-19 vaccination status. [DE 54]. In response to this filing, Mr. Johnson has made three additional filings, including two more motions for reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and to supplement and amend this pending motion previously ruled on by the Court. [DE 55–57; 63]. The Court has considered all of these filings and does not find any reason to amend its original denial of Mr. Johnson's motion for compassionate release and therefore denies Mr. Johnson's original motion as well as his subsequent motions.

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence,

after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commissions, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. Those include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13 n.1. Because Mr. Johnson submitted a request to the Warden at least 30 days before filing his motion with the Court, pursuant to § 3582(c)(1)(A), which the Warden denied [DE 44-1 at 17–18], the Court reviews the merits of the motion.

First, the Court does not find that extraordinary and compelling reasons warrant compassionate release, home confinement, or a reduction in sentence here. In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Council*, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020); *see also United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). In determining whether there is an extraordinary and compelling reason to modify a term of imprisonment, the Court may consider (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, (3) the age of the defendant, and (4) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, 2020 WL 3264112, at *3 (N.D. Ind. June 17,

2020); *see also United States v. Davis*, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic).

    Mr. Johnson is currently 29 years old. As previously exampled in the Court's February 4 Order, Mr. Johnson argues he is at risk for severe illness if he contracts COVID-19 because he had childhood asthma, is currently obese, and was a lifetime tobacco user. [DE 44 at 2; 49 at 3]. The Centers for Disease Control ("CDC") reports that the risk of severe illness from COVID-19 increases with age, and that while the greatest risk of severe illness is among those aged 85 or older, adults aged 65 and older have increased risk.[1] Mr. Johnson is far from this age range. Mr. Johnson states that he is obese with a BMI of over 30. The CDC lists overweight (BMI between 25 and 30) and obesity (BMI between 30 and 40) as a condition that "can make you more likely" to get severely ill from COVID-19.[2] Prior to the Court's previous ruling, Mr. Johnson did not submit medical records. However, in his subsequent filings he has submitted medical evidence that indicates he is obese but does not specify his BMI. [DE 51-1 at 1]. Mr. Johnson argues that obesity alone can be an extraordinary and compelling reason for release and cites two district court cases in other circuits. [DE 52]. However, with no other serious resulting conditions, his obesity, which is described vaguely as "a BMI of over 30," fails to persuade the Court that it qualifies as extraordinary and compelling.

---

[1] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last updated May 13, 2021); *COVID-19 Risks and Vaccine Information for Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/aging/covid19/covid19-older-adults.html, (last visited Aug. 9, 2021).

[2] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last updated May 13, 2021).

The CDC has also included moderate to severe asthma among conditions that "can make you more likely" to get severely ill from COVID-19.[3] Based on his motion, Mr. Johnson is not currently suffering from asthma and he does not need an inhaler or any medication to control it, however he is concerned it will reoccur if infected with the virus. The medical records Mr. Johnson submitted indicate he "[d]enies asthma" and although the nurse practice notes that it is "unclear if [he has] asthma," he was prescribed an albuterol inhaler to use as needed. *Id.* at 4, 6, 8. He reported to the BOP medical personnel that he was having difficulties breathing, however it is noted that it is unclear whether this was caused by asthma or related to anxiety. *Id.* at 8. Mr. Johnson also asserts he was a lifetime smoker. While the CDC has listed being a former smoker as a condition that can increase the risk for severe illness, it does not constitute an extraordinary and compelling circumstance for Mr. Johnson's release. There is no other indication that Mr. Johnson is at an increased risk of severe illness if infected with COVID-19.

The BOP's records have Milan FCI currently reporting zero inmates and four staff members testing positive for COVID-19.[4] Tragically, there have been three inmate deaths at the facility due to the virus. Though Mr. Johnson criticizes the way his facility has handled the virus, the BOP has implemented several precautions to help mitigate the spread. Of course, these precautions cannot guarantee that the number of positive inmates will not increase in the prison, and some prisons have experienced outbreaks despite those precautions, particularly as cases increased throughout the country. Over the course of the COVID-19 pandemic, there have been 244 inmates and 82 staff members who have tested positive for the virus at Milan.[5] Fortunately,

---

[3] *Id.*
[4] *See Covid-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/, (last updated Aug. 9, 2021).
[5] *Id.*

4

the number of current cases is extremely low, likely due to the BOP's vaccine distribution efforts.

The BOP has reported that it is in the process of distributing and administering the COVID-19 vaccine to staff and inmates under the guidance of the CDC. As of August 9, 2021, the BOP has administered 208,690 doses of the vaccine.[6] More specifically, as of August 9, Milan has 684 inmates and 160 staff members fully inoculated.[7] This means fifty-one percent of the inmate population at Milan is fully vaccinated, greatly reducing the likelihood of another spike in COVID-19 cases in the facility.[8] Mr. Johnson received his first dose of the COVID-19 vaccine on April 6, 2021 and he stated he was going to get his second dose 4-6 weeks later.[9] [DE 56 at 1–2]. According to the CDC, the Moderna vaccine is "94.1% effective at preventing laboratory confirmed COVID-19 illness in people who received two doses who had no evidence of being previously infected" and was found with high certainty to prevent symptomatic COVID-19, and with moderate certainty to prevent hospitalization related to COVID-19.[10]

---

[6] *Id.*

[7] *Id.*

[8] Milan currently houses 1,327 total inmates. *FCI Milan*, Federal Bureau of Prison, https://www.bop.gov/locations/institutions/mil/, (last visited Aug. 2, 2021).

[9] The record does not indicate whether Mr. Johnson has received his second Moderna vaccination shot, however, he states that was going to take the second shot in his May 7, 2021 filing. [DE 56].

[10] *Moderna*, Centers for Disease Control and Prevention, (June 11, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html; *Morbidity and Mortality Weekly Report (MMWR), The Advisory Committee on Immunization Practices' Interim Recommendation for Use of Moderna COVID-19 Vaccine—United States*, Centers for Disease Control and Prevention, December 2020, https://www.cdc.gov/mmwr/volumes/69/wr/mm695152e1.htm?s_cid=mm695152e1_w.

The United States is currently experiencing an increase of COVID-19 cases that have been identified as the Delta variant. The CDC has labeled this variant as a "variant of concern." *SARS-CoV-2 Variant Classifications and Definitions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant-info.html#Concern, (last updated Aug. 3, 2021). A variant of concern is one which "there is evidence of an increase in transmissibility, more severe disease (e.g., increased hospitalizations or deaths), significant reduction in neutralization by antibodies generated during previous infection or vaccination, reduced effectiveness of treatments or vaccines, or diagnostic detection failures." *Id.* However, the CDC has stated that the COVID-19 vaccines are effective against severe disease and death from variants of the virus currently circulating in the United States, including the Delta variant. *When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html, (last updated July 27, 2021).

An overwhelming amount of district courts across the country have held that being fully vaccinated drastically reduces the risk of becoming severely ill and therefore denied compassionate release. *See, e.g.*, *United States v. Pennington*, 2021 WL 1976803, at *2 (N.D. Ind. May 18, 2021) ("By far the biggest reason compassionate release is not appropriate in this case is that [the defendant] is vaccinated."); *United States v. Baeza-Vargas*, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021) (citing more than a dozen cases); *United States v. Singh*, 2021 WL 928740, at *3 (M.D. Penn. March 11, 2021) ("as a result of his vaccination, [the defendant] now has significant protection against serious illness or death should he contract COVID-19 and, accordingly, the Court concludes that [the defendant] has not demonstrated that his underlying conditions—in combination with the possibility of a COVID-19 infection—provide extraordinary and compelling reasons to grant his motion for compassionate release"). Recently, the Seventh Circuit has also weighed in on this issue. In *United States v. Broadfield*, No. 20-2906, 2021 WL 3076863 (7th Cir. Jul. 21, 2021), the Court held that prisoners who have been vaccinated or who have been offered but declined a vaccine may not rely on the risk of contracting COVID-19 as an "extraordinary and compelling reason" justifying release. Thus, given all of these circumstances, the Court cannot find that extraordinary and compelling reasons warrant compassionate release or a sentence reduction. Section 3582(c) provides the only mechanism for modifying Mr. Johnson's sentence to home confinement since the Court cannot control the BOP's placement decisions, and because he is not entitled to relief under that provision, the Court cannot grant that request.

Second, as stated in its February 4 Order, even if the above facts qualified as extraordinary and compelling reasons, the Court would still deny the motion based on its consideration of the § 3553(a) factors. For the reasons stated in its previous Order, the Court

does not find that the § 3553(a) factors support Mr. Johnson's compassionate release to home confinement or a reduction in sentence.

For those reasons, the Court DENIES Mr. Johnson's motions for compassionate release to home confinement or reduction in sentence. [DE 44; 57; 63].

SO ORDERED.

ENTERED: August 10, 2021

                                            /s/ JON E. DEGUILIO
                                            Chief Judge
                                            United States District Court